# A F F I D A V I T

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

    I, Tana Austin, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

**1)**    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since March 2023.  I am currently assigned to the ATF Louisville Field Division, Charleston, West Virginia Field Office.

**2)**    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following electronic communication devices, specifically:

  a. Device 1: Apple iPhone, light green in color, bearing model number A2172, as described in Attachment "A";

  b. Device 2: TCL cellular telephone, black in color, as described in Attachment "A" (hereinafter collectively "the Devices") and,

  c. The extraction from both Devices of electronically stored information as described in Attachment "B."

**3)**    The contents of Attachment "A" and Attachment "B" to this Affidavit and the application for a search warrant are hereby incorporated by reference.

**4)**    The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.

**5)**    Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this warrant.

## STATUTORY AUTHORITY

**6)**    This investigation concerns alleged violations of Title 21, U.S.C. § 841(a)(1) – Manufacture, Distribute, or Possess with Intent to Manufacture or Distribute a Controlled Substance, and Title 18, U.S.C. § 922 (g)(1) – Felon in Possession of a Firearm.

## AFFIANT'S TRAINING AND EXPERIENCE

**7)**    Your Affiant is currently employed as a Special Agent with the ATF.

**8)**    Your Affiant graduated from the Federal Law Enforcement Training Center, where I learned basic criminal investigation techniques. In addition, I graduated from the ATF National Academy, where I learned about federal firearms laws, federal

2

explosives laws, bomb scene investigations, and arson investigations.

**9)** Your Affiant has received investigative training, conducted and participated in investigations of violations of federal criminal laws, including those relating to firearms and controlled substances. These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession or use of explosives, and/or destructive devices. I have also discussed with other law enforcement officers about the methods and practices used by illegal drug distributors.

**10)** In my current position as an ATF Special Agent assigned to the Charleston, West Virginia Field Office, my primary responsibilities include investigating individuals or groups who have committed violations of the federal firearms and controlled substance laws. Within that role, my job duties include, but are not limited to:

a. Functions as a case agent, which entails the supervision of specific investigations;

b. Interviewing witnesses relative to the illegal trafficking of drugs and firearms and the distribution of monies and assets derived from these illegal acts;

3

c. Functioning as a surveillance agent observing and recording movements of persons trafficking in drugs and firearms and those suspected of trafficking in drugs and firearms; and,

d. Drafting, obtaining and executing search warrants.

## AFFIANT'S KNOWLEDGE OF CELLULAR TELEPHONES AND THEIR USE IN CRIMINAL ACTIVITY

11)    Your Affiant is personally, and professionally, familiar with cellular telephones or mobile telephones.

12)    I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communications between parties.

13)    I am aware that cellular telephones usually include a "call log," which records the telephone number, date, and time of calls made to and from the cellular telephone.

14)    In addition to enabling voice communications, I know that cellular telephones now offer a broad range of functions, which include, but are not limited to: storing names and phone numbers in electronic address books or contact lists; sending, receiving, and storing text messages and emails; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; accessing and downloading information from the internet; and sending, receiving, and storing GPS coordinates of a phone's location.

**15)** Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know that cellular telephones, such as the Devices described in Attachment "A," can store electronic information for long periods of time.

**16)** Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know it is a common practice for drug traffickers to use and keep cellular telephones in order to facilitate their drug trafficking business. Cellular telephones allow drug traffickers to remain in close and nearly instantaneous communication with their customers and suppliers.

**17)** Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know it is common for cellular telephones used by drug distributors and users to contain evidence of drug trafficking. This evidence includes call logs, text messages, stored emails, contact lists, photographs and video images of drugs, drug proceeds, and drug trafficking paraphernalia and activity, and other information.

**18)** Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know that cellular telephones are used to communicate with illegal drug sources and conspirators as it pertains to firearms and drug trafficking. These devices may possess information for how the

5

drugs and firearms were acquired and may identify other conspirators known and unknown.

19) Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know the electronic memories of cellular telephones, including social media applications, have been found to contain evidence of illegal firearm possession, including communications regarding when and how an illegal firearm was obtained, who obtained the illegal firearm for the possessor, and the motivation for possessing the illegal firearm.

20) Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know that people who sell or possess firearms illegally frequently take or cause to be taken photographs or other images of themselves in possession of firearms, their associates, their property and assets with cellular telephones. They also frequently utilize cellular telephones as a way to communicate with other individuals in order to purchase or sell firearms and illegal drugs.

21) Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know that drug traffickers also utilize applications, sometimes end to end encryption applications, to communicate and conduct their drug trafficking business. Such applications include Facebook, Facebook Messenger, WhatsApp, Signal, Telegram, Instagram,

TikTok, etc. Such applications often have the communications stored in the application on the target's cellular device.

## PROBABLE CAUSE

**22)** On or about July 12, 2025, Parkersburg (West Virginia) Police Officer S.D Suttles (Patrolman Suttles), initiated a traffic stop on a 2024 Chevrolet Malibu ("the vehicle") in the 1200 block of 31st Street in Parkersburg, West Virginia, based on a complaint that had been received by local law enforcement agencies of an unnamed male occupant of the vehicle brandishing a firearm. The driver pulled over and began to exit the vehicle.

**23)** Patrolman Suttles observed a female subject (later identified as Tina James, hereinafter "JAMES") get out of the driver's side of the vehicle and walk away from the traffic stop. Patrolman Suttles could see a male subject (later identified as David LYNCH, hereinafter "LYNCH") get into the driver's seat of the vehicle from the passenger seat. LYNCH took control of the vehicle and began to flee the scene which led to a vehicle pursuit. LYNCH eventually lost control of the vehicle and struck a telephone pole and continued to flee the scene on foot. As Patrolman Suttles was in a foot pursuit with LYNCH, LYNCH fell over, and Patrolman Suttles was able to gain control of LYNCH's hands and place him under arrest. LYNCH was later transported to the Wood County Holding Center in Parkersburg, West Virginia, where Correctional Officers located $1700 on LYNCH's person.

**24)**    Sergeant C.A Miller (Sgt. Miller) arrived on scene to assist Patrolman Suttles and began a search of the vehicle. In the front passenger floorboard, within arm's reach of where LYNCH was seated, Sgt. Miller recovered a loaded Glock, 9mm caliber pistol. Along with the firearm was a light green Apple iPhone believed to belong to LYNCH (Device 1). Sgt. Miller removed a McDonald's bag from under the front passenger seat and began searching it outside of the vehicle.

**25)**    Inside of the McDonald's bag, approximately 28.9 grams of suspected methamphetamine, approximately 34 grams of suspected fentanyl, approximately 4.1 grams of suspected heroin and approximately 26.6 grams of suspected fentanyl were recovered by Sgt. Miller. The suspected controlled substances were packaged separately in individually wrapped bags. As he continued to search underneath the passenger seat, Sgt. Miller further recovered approximately 124 grams of suspected methamphetamine in a Ziplock bag, and approximately 83 grams of suspected methamphetamine in a plastic grocery bag.

**26)**    While searching the remainder of the vehicle, Sgt. Miller recovered the following items packaged together in the rear driver's side floorboard: approximately 16.6 grams of suspected methamphetamine, approximately 40 suspected fentanyl pills, approximately 14 suspected fentanyl pills, and approximately 7.7 grams of suspected crack cocaine. In the

driver's side front door pocket, Sgt. Miller recovered 16.3 grams of suspected cocaine. In the passenger's side door pocket, Sgt. Miller recovered 26.6 grams of suspected marijuana.

27)    When asked about the firearm, JAMES told the officers "...I don't have it...It's in the car...on the passenger side...in the center where the gear shift is...I was only giving him a ride...". JAMES was then searched incident to arrest and placed into custody. Her black TCL cellular telephone (Device 2) was seized.

28)    Your affiant knows that the presence of a large amount of United States Currency and the presence of multiple bags of suspected controlled substances is consistent with the currency representing proceeds from drug trafficking. Your affiant further knows that individuals who engage in street level drug distribution often possess cellular phones in the course of, and to facilitate, their illegal drug trafficking business.

29)    Finally, your affiant knows that street level drug traffickers possess firearms for several reasons including, but not limited to, repelling a perpetrator's attempt to rob them of their drugs and drug proceeds, to deter robbery attempts, to "motivate" customers to pay for illegal drugs in a timely manner and to deter drug sources from selling them "sham" drugs or drugs of an inferior quality.

**PRIOR FELONY CONVICTIONS**

9

**30)**    LYNCH was convicted in the Franklin County (Ohio) Court of Common Pleas of Burglary, a Felony of the Second Degree, in case number 03 CR 006183 on or about January 13, 2006.  He was convicted of an additional Count of Burglary, a Felony of the Second Degree, in the same court, on the same date, in case number 03 CR 006779.  Also on the same date, in the same court, in case number 04 CR 005939, he was convicted of Aggravated Burglary, a Felony of the First Degree.  Finally, on the same date, in the same court, in case number 04 CR 006084, he was convicted of Involuntary Manslaughter and Aggravated Robbery, both Felonies of the First Degree.  All of these offenses are crimes punishable by imprisonment for a term exceeding one year.

### CUSTODY OF THE CELLULAR TELEPHONES

**31)**    The Cellular Telephones, Devices 1 and 2 described in Attachment "A," were seized by the Parkersburg Police Department (PPD) during the traffic stop of LYNCH that occurred on July 12, 2025. After the devices were seized, they remained with PPD until on or about July 15, 2025. The devices were then transferred to the custody of the ATF Charleston, West Virginia Field Office, 300 Summers Street, Charleston, West Virginia 25301, where they were placed into ATF evidence and have remained since that time.

**32)**    In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same

10

state as they were when they first came into the possession of ATF.

## NATURE OF THE EXAMINATION

**33)**  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether they are evidence described by the warrant.

**34)**  Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

**35)**  Based on my training and experience, and the facts set forth above, I believe there is probable cause that evidence of criminal violations of Title 21, U.S.C. § 841(a)(1) - Manufacture, Distribute, or Possess with Intent to Manufacture or Distribute a Controlled Substance, and Title 18, U.S.C. § 922 (g)(1) - Felon in

Possession of a Firearm, will be found on the Devices described more completely in Attachment "A."

36)    WHEREFORE, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment "A" to seek the information described in Attachment "B."


Further your affiant sayeth naught.


_____
Tana Austin
Special Agent, ATF


Subscribed and sworn to before me by telephone on this 23rd day of July 2025.


_____
DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE


12